# 23-944

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆▪◆

LINK MOTION INC.,

*Plaintiff-Appellant,*

—against—

DLA PIPER LLP (US), CARYN G. SCHECHTMAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

MICHAEL J. MALONEY
ROSANNE E. FELICELLO
FELICELLO LAW P.C.
366 Madison Avenue, 3rd Floor
New York, New York 10017
(212) 584-7806

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................ii

ARGUMENT ........................................................................................................ 1

POINT I.   THIS CASE SHOULD BE REMANDED TO STATE COURT .......... 2

A.   There is no original federal question jurisdiction over this action. ...... 3

B.   DLA is wrong that *Achtman* provides for supplemental jurisdiction
to remove this case to federal court. ..................................................... 8

POINT II.   THIS ACTION SHOULD NOT HAVE BEEN DISMISSED  ON
STATUTE OF LIMITATIONS GROUNDS ..................................... 10

A.   New York's Executive Orders tolled the statute of limitations........... 10

B.   Defendants' representation was not limited. ....................................... 12

C.   The continuous representation doctrine tolled the limitations period
until at least February 4, 2019. ........................................................... 13

D.   Equitable tolling could have been applied. ......................................... 15

POINT III.   THE DISTRICT COURT'S DECISION DID NOT EXAMINE
CAUSATION AND THIS COURT SHOULD NOT AFFIRM
DISMISSAL ON THAT GROUND. .................................................. 16

CONCLUSION ................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney Squire,*
    464 F.3d 328 (2d Cir. 2006) .................................................................9, 10

*Baliga v. Link Motion Inc.,*
    385 F. Supp. 3d 212 (S.D.N.Y. 2019) ..........................................passim

*Baliga v. Link Motion Inc.,*
    No. 18 CIV 11642 (VM), 2023 WL 4841883 (S.D.N.Y. July 28, 2023) .............17

*Baliga v. Link Motion Inc.,*
    No. 18 CIV. 11642 (VM), 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022) .............4

*Baliga v. Link Motion Inc.,*
    No. 18CV11642 (VM) (DF), 2020 WL 5350271 (S.D.N.Y. Sept. 4, 2020) ..17, 21

*Baliga v. Link Motion, Inc.,*
    No. 18 CIV. 11642 (VM), 2022 WL 16707361 (S.D.N.Y. Nov. 4, 2022) ...........17

*Barnett v. Schwartz,*
    47 A.D.3d 197 (N.Y. App. Div. 2d Dep't 2007) ...................................19

*Brash v. Richards,*
    195 A.D.3d 582 (N.Y. App. Div. 2d Dep't 2021) .................................10

*Cordero v. Koval Retjig & Dean PLLC,*
    151 A.D.3d 587, 57 N.Y.S.3d 145 (2017)..........................................14

*Deep v. Boies,*
    16 Misc. 3d 1121 (A), 847 N.Y.S.2d 901 (N.Y. Sup. Ct. Albany County 2007) .12

*Deep v. Boies,*
    53 A.D.3d 948 (3d Dep't 2008) ....................................................12

*Deutsch v. Polly N. Passonneau, P.C.,*
    297 A.D.2d 571 (N.Y. App. Div. 2002)............................................12

*Doe v. United States,*
    76 F.4th 64 (2d Cir. 2023) ........................................................15

*Dunnegan v. 220 E. 54th St. Owners, Inc.,*

518 F. Supp. 3d 764 (S.D.N.Y. 2021) ................................................................11

*Flaherty v. Dixon*,
    No. 22 CIV. 2642 (LGS), 2023 WL 2051861 (S.D.N.Y. Feb. 16, 2023) .............11

*Frederick v. Meighan*,
    75 A.D.3d 528 (N.Y. App. Div. 2d Dep't 2010) .................................................12

*Garten v. Shearman & Sterling LLP*,
    52 A.D.3d 207 (N.Y. App. Div. 1st Dep't 2008) .................................................19

*Goldstein v. Albert (In re Albert)*,
    277 B.R. 38 (Bankr. S.D.N.Y. 2002) .................................................................12

*Gunn v. Minton*,
    568 U.S. 251 (2013) .............................................................................6, 8, 10

*In re Standard & Poor's Rating Agency Litig.*,
    23 F. Supp. 3d 378 (S.D.N.Y. 2014) ...................................................................4

*Johnson v. Nyack Hosp.*,
    86 F.3d 8 (2d Cir. 1996) ...................................................................................16

*Kirk v. Heppt*,
    No. 05 Civ. 9977, 2009 WL 2870167, 2009 U.S. Dist. LEXIS 80989 (S.D.N.Y.
    Sept. 3, 2009) .............................................................................................19, 20

*Lafayette-Boynton Apartment Corp. v. Lopez*,
    No. 21-CV-7997 (JMF), 2022 U.S. Dist. LEXIS 114364 (S.D.N.Y. June 28,
    2022) ..................................................................................................................9

*Lee v. Leifer*,
    209 A.D.3d 531 (N.Y. App. Div. 1st Dep't 2022) ...........................................8, 18

*Lehman Bros. Holdings v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.
Holdings)*,
    469 B.R. 415 (Bankr. S.D.N.Y. 2012) .................................................................2

*Marquez v. Indian Taj, Inc.*,
    20 CV 5855 (DG)(RML), 2022 U.S. Dist. LEXIS 139845 (E.D.N.Y. Aug. 5,
    2022) ................................................................................................................11

*McLaughlin v. Snowlift Inc.*,

214 A.D.3d 720 (N.Y. App. Div. 2d Dep't 2023)...................................................10

*Michalski v. Home Depot, Inc.*,
  225 F.3d 113 (2d Cir. 2000) ................................................................11

*Murphy v. Harris*,
  210 A.D.3d 410 (N.Y. App. Div. 1st Dep't 2022)................................10

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
  770 F.3d 1010 (2d Cir. 2014) ...................................................................5

*New York v. Shinnecock Indian Nation*,
  686 F.3d 133 (2d Cir. 2012) .....................................................................5

*Pace v. DiGuglielmo*,
  544 U.S. 408 (2005)................................................................................15

*Port Authority of N.Y. & N.J. v. Allianz Ins. Co.*,
  443 F. Supp. 2d 548 (S.D.N.Y. 2006) ....................................................8

*Powell v. United States*,
  19 Civ. 11351 (AKH), 2022 U.S. Dist. LEXIS 93314 (S.D.N.Y. May 24, 2022)11

*Romanian Am. Interests, Inc. v. Scher*,
  94 A.D.2d 549 (N.Y. App. Div. 2nd Dept. 1983)..................................12

*Russell v. Legal Aid Soc. Of New York*,
  200 F. App'x 37 (2d Cir. 2006) ...........................................................3, 4

*Ry. Lab. Executives' Ass'n v. Staten Island R. Corp.*,
  792 F.2d 7 (2d Cir. 1986) ......................................................................16

*Schrull v. Weis*,
  166 A.D.3d 829, 87 N.Y.S.3d 228 (2018)..............................................14

*Shumsky v. Eisenstein*,
  96 N.Y.2d 164 (N.Y. 2001) ...................................................................13

*Skinner v. Stone, Raskin & Isreal*, 724 F.2d 264 (2d Cir. 1983)............................20

*Smalls v. Collins*,
  10 F.4th 117 (2d Cir. 2021) ...................................................................15

*State by Tong v. Exxon Mobil Corp.*,

No. 21-1446-CV, 2023 WL 6279941 (2d Cir. Sept. 27, 2023) .........................5, 6

*Syngenta Crop Prot., Inc. v. Henson*,
  537 U.S. 28 (2002)..................................................................................2, 8, 9

*Torres v. Barnhart*, 417 F.3d 276 (2d Cir. 2005) ....................................................15

*Warren v. Garvin*,
  219 F.3d 111 (2d Cir. 2000) ................................................................16

*Williams v. Ideal Food Basket, LLC*,
  219 A.D.3d 917 (N.Y. App. Div. 2d Dep't 2023) ................................11

*Wolfson v. Ernst*,
  112 F. Supp. 3d 167 (S.D.N.Y. 2015) .....................................................6

*Yonkers Raceway, Inc v. Standardbred Owners Ass'n*,
  21 F.R.D. 3 (S.D.N.Y. 1957) ............................................................7, 18

## Statutes

28 U.S.C. § 1441 ..............................................................................9, 11

## Other Authorities

Fed. R. Civ. Proc. 65 ........................................................................passim

Fed. R. Civ. Proc. 66 ..............................................................1, 8, 21, 25

# ARGUMENT

Defendant-Respondents' brief ("Resp. Br.") transposes the facts to obfuscate the issues on appeal. To simplify: Defendants represented Link Motion[1] in response to Baliga's shareholder derivative complaint and December 2018 motion under Fed. R. Civ. P. Rules 65 and 66 for provisional equitable relief. Defendants appeared at a court hearing on behalf of Link Motion, filed at least one joint letter with the court, and signed a stipulation purportedly on behalf of Link Motion agreeing to the entry of a preliminary injunction and appointment of the Receiver. Only after taking these actions—which are consistent with legal representation under New York law—and after it became apparent that the imposition of the Rule 65 and 66 provisional equitable relief would cause Link Motion to be unable to pay DLA's fees, did DLA inform Link Motion that it was going to seek leave to withdraw from the representation. Almost a month later, DLA submitted a letter motion to withdraw, which he *Baliga* Court granted on the same day. Defendants' failure to present Link Motion's meritorious arguments in opposition to Baliga's Rule 65 and 66 motion caused harm to Link Motion.

In addition to misstating the facts, Defendants misstate the law. First, Defendants misstate New York law concerning the correct interpretation of New

---

[1] Unless stated otherwise, all capitalized terms have the meanings assigned to them in Link Motion's Opening Brief (the "Op'g Br.").

York's Executive Orders that tolled the statute of limitations in New York from March 20, 2020, and November 3, 2020, adding an additional 228 days to limitations periods. Second, Defendants misstate the law of continuous representation in New York, which tolls the limitations period until counsel provides notice to its client that it intends to withdraw. Third, Defendants misstate the requirement for original federal jurisdiction under the removal statute. As the Supreme Court has held, "petitioners must show [original jurisdiction] in order to qualify for removal under § 1441." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002). Supplemental jurisdiction is insufficient for removal as a matter of law. Fourth, DLA wrongly claims that New York law does not recognize the theory of equitable tolling when it does. DLA cannot–and does not–refute the showings in Link Motion's opening brief on appeal that this case should be remanded to state court and that the dismissal on statute of limitations grounds should be vacated.[2]

### POINT I.

### THIS CASE SHOULD BE REMANDED TO STATE COURT

Removal was improper here and this case should be remanded to state court.

---

[2] DLA's reference to a "failed derivative suit that is now the subject of Rule 11 sanctions" is purposefully and gratuitously misleading. The report & recommendation referred to is not part of the record on this appeal and is based on the fundamentally flawed legal proposition that Link Motion no longer held an interest in an asset when that asset had been pledged to Link Motion. *See* ECF No. 63 at 18, Case No. 1:21-cv-10911, citing *Lehman Bros. Holdings v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings)*, 469 B.R. 415, 440 (Bankr. S.D.N.Y. 2012) ("[C]ourts uniformly have treated a pledge or the attachment and perfection of a security interest as a 'transfer' of an interest in property").

The Supreme Court has made clear that legal malpractice claims, even those stemming from an alleged mistake of federal law, do not "arise under" federal law and do not provide federal question jurisdiction. Nor does supplemental jurisdiction provide an independent basis for removal of an action to federal court. The District Court's decision that this case is somehow "special" and falls outside the statute and Supreme Court precedent is incorrect, as are DLA's arguments in opposition to Link Motion's appeal.

## A. There is no original federal question jurisdiction over this action.

Ignoring New York State's strong interest in monitoring the behavior of New York attorneys, DLA insists that Link Motion's legal malpractice claim "arises under federal law" because the underlying case was brought in federal court. This assertion is incorrect.

A legal malpractice claim is a state law claim, even if there are defenses that arise from prior federal court decisions. *Russell v. Legal Aid Soc. Of New York*, 200 F. App'x 37, 38 (2d Cir. 2006). "Whether or not this claim is precluded by the District Court's earlier dismissal, its gravamen rests entirely on state law." *Russell*, 200 F. App'x at 38. Here, as in other cases where a possible defense to the state law malpractice claim is based on a federal court order or decision, this case should have been remanded to state court. *Id.* (remanding to state court even where "the

preclusive effect of the district court's earlier dismissals is a question of federal law").

Both the District Court's decision and DLA's argument show that the only potential "federal issue" relates to DLA's defense: whether the *Baliga* Court's[3] August 25, 2022 decision, denying Link Motion's request to vacate the receivership *ab initio*, (SPA-7), is a complete defense to Link Motion's legal malpractice claim. (Resp. Br. at 26) (quoting the District Court, "this Court has *already addressed* Baliga's standing and the propriety of the receivership") (citing SPA-16). *See Baliga v. Link Motion Inc.*, No. 18 CIV. 11642 (VM), 2022 WL 3699339, at *5 (S.D.N.Y. Aug. 25, 2022). But a state law claim only "arises under" federal law where the federal issue is an "essential element of a plaintiff's claim," not if it is an element of a defense. *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 394-95 (S.D.N.Y. 2014) (collecting cases) (cleaned up); *see also Russell*, 200 F. App'x at 38.

DLA's citation to *NASDAQ OMX Group, Inc. v. UBS Securities, LLC* does not change this analysis. Resp. Br. 54 at 41. In that case, the court found that NASDAQ's purported violations of state law depended on substantial disputed issues of federal law because federal law determined the "contours of NASDAQ's federal duty to

---

[3] "*Baliga* Court" refers to the underlying action, *Baliga v. Link Motion, Inc. et al.*, No. 1:18-cv-11642-VM, that is the subject of this legal malpractice claim.

maintain a fair and orderly market, the scope of that duty, and whether the failure of NASDAQ's systems . . . amounted to a breach of that duty." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1023 (2d Cir. 2014). There, the plaintiff sought to hold NASDAQ – a national securities exchange – responsible for violating its "Exchange Act obligation to provide a fair and orderly market in conducting an IPO," which affected "the federal system as a whole." *NASDAQ OMX Grp., Inc.* , 770 F.3d at 1024. In other words, federal law shaped the claim. Here, plaintiff Link Motion is seeking to hold Defendants—a law firm and lawyer providing legal services in New York—responsible for violating their standard of care as New York attorneys. Whether DLA was negligent under New York law does not depend on federal law, in contrast to how the duties owed *NASDAQ OMX Group* turned on federal law. A determination of DLA's negligence here is entirely independent of federal law.

As this Court has recently found: "if a 'court could . . . resolve[ ] the case without reaching the federal issues,' then 'the claims do not necessarily raise a federal issue.'" *State by Tong v. Exxon Mobil Corp.*, No. 21-1446-CV, 2023 WL 6279941, at *10 (2d Cir. Sept. 27, 2023), quoting *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140–41 (2d Cir. 2012). As in *State by Tong v. Exxon Mobil*, here "no 'federal issue is . . . necessarily raised'" by Plaintiff's legal malpractice claim, which asks if DLA met the standard of care of competent attorney by the

standards of New York law when representing Link Motion in opposition to Baliga's December 2018 motion for Rule 65 and 66 remedies. *See State by Tong*, 2023 WL 6279941, at *12. DLA's insistence that a determination that it is liable will cause a prior decision of the federal court to be overturned is incorrect. A finding in Plaintiff's favor would lead to damages owed by DLA to Plaintiff. None of the *Baliga* Court's prior federal rulings would be undone. The appointment of the Receiver will not be undone. There will be no effect on the federal system at all. The only parties to be affected are DLA and Plaintiff.

Thus, as in *Gunn v. Minton*, a "backward-looking . . . legal malpractice claim"—which asks if the attorney had made a certain argument, would the result have been different—does not raise a substantial federal issue. *Gunn v. Minton*, 568 U.S. 251, 262 (2013). *See also Wolfson v. Ernst*, 112 F. Supp. 3d 167, 171 (S.D.N.Y. 2015). Here, the hypothetical question is: Would a District Court have ruled differently on Baliga's motion under Rules 65 and 66 if Link Motion had presented evidence and argument that Baliga lacked standing to bring derivative claims and failed to allege purchases and sales of securities? This question does not raise a substantial federal issue because even if the answer is "yes," there would be no forward-looking effect on the federal system. DLA would merely be liable to Plaintiff for damages.

DLA's contrary contentions are without merit and should be ignored. The state court would not be overruling any federal ruling if it were to determine that DLA committed malpractice by failing to advise Plaintiff as to the ramifications of stipulating to the Rule 65 and 66 motion by Baliga for entry of a preliminary injunction and appointment of a Receiver. *See* Resp. Br. at 46. The Defendants' failure to assert meritorious defenses in opposition to Baliga's Rule 65 motion caused harm to Link Motion because once the *Baliga* Court entered the receivership order, it could be changed only upon a showing that "clear[]error was committed, or that additional facts were brought out at the trial which demand a modification or reversal," *Yonkers Raceway, Inc v. Standardbred Owners Ass'n*, 21 F.R.D. 3, 6 (S.D.N.Y. 1957), a standard that is much more onerous than that applicable to a party opposing a Rule 65 motion in the first instance.

DLA's suggestion (Resp. Br. at 35) that remanding this case to state court would put the state court in the position of holding attorneys liable for the costs of the receivership that a federal court has already held to be proper costs of the Company is misleading. The Defendants' role in consenting to the receivership was not before the *Baliga* Court when it determined who is to bear the costs of the receivership. And it is often the case that when a client is found liable in action A (as the Company would be for the receivership costs here), it seeks to recoup that liability from its counsel who committed legal malpractice in action B (the legal

7

malpractice claim). A ruling on the malpractice claims does not change or violate the decision made by the court in the underlying action A. *See*, *e.g.*, *Lee v. Leifer*, 209 A.D.3d 531, 532 (N.Y. App. Div. 1st Dep't 2022).

The facts here are similar to the facts at issue in *Gunn v. Minton*, where the Supreme Court refused to find federal jurisdiction over a legal malpractice claim where the underlying claim was based on federal patent law. *See Gunn*, 568 U.S. at 262. Contrary to the lack of a federal interest in Link Motion's legal malpractice claim, New York State has a substantial interest in regulating attorney conduct. Op'g Br. at 24.

## B. DLA is wrong that *Achtman* provides for supplemental jurisdiction to remove this case to federal court.

The removal statute is clear that only civil actions for which the federal court has original jurisdiction may be removed to district court. 28 U.S.C. § 1441. As the Supreme Court and numerous lower courts have repeatedly ruled, supplemental jurisdiction under 28 U.S.C. § 1367 does not confer original jurisdiction and is not an independent basis for removal. *E.g.*, *Syngenta*, 537 U.S. at 34 (because "[r]emoval is governed by statute," the statutory requirements must be complied with in order for removal to be effected); *Port Authority of N.Y. & N.J. v. Allianz Ins. Co.*, 443 F. Supp. 2d 548, 555 (S.D.N.Y. 2006) ("supplemental jurisdiction cannot supply the original jurisdiction needed to remove a state court complaint under 28 U.S.C. § 1441(a)"); *Lafayette-Boynton Apartment Corp. v. Lopez*, No. 21-CV-7997

(JMF), 2022 WL 2316461, at *3, 2022 U.S. Dist. LEXIS 114364, at *9 (S.D.N.Y. June 28, 2022) (Section 1367 "is not a source of subject-matter jurisdiction for federal-question purposes").

Defendants' citation to *Achtman v. Kirby, McInerney Squire*, 464 F.3d 328, 336 (2d Cir. 2006), is inapposite because *Achtman* does not change this clear law. *Achtman* did not involve removal of a claim from state court. Rather, there the class action plaintiffs chose federal court (not state court) as the venue to assert their legal malpractice claim. *Id.* And to the extent that *Achtman* could be read—as DLA appears to suggest—that every legal malpractice claim based on an underlying federal claim may be removed to federal court on the basis of supplemental jurisdiction, such a holding would directly contradict the mandate of *Gunn-Grable* as set forth by the Supreme Court.

The Court should not create a judicial exception to the statutory limitation imposed by 28 U.S.C. § 1441(b)(2). *Syngenta*, 537 U.S. at 34. Defendants' suggestion that there is a "substantial overlap" between the legal malpractice claim asserted by the Company against its former attorneys and the current federal securities claims asserted by Baliga in the underlying action is wrong. The legal malpractice claim asks whether a District Court would have decided Baliga's December 2018 application for Rule 65 provisional equitable relief differently if Defendants had opposed that motion. Baliga's current securities law claims ask

whether Link Motion misstated material facts in connection with Baliga's purchase and sale of securities on the New York Stock Exchange. Even if there were a "substantial overlap" and the very different claims here shared "the same common nucleus of operative fact," *Achtman*, 464 F.3d at 335, that would still would not be sufficient to meet the requirements of the removal statute or Supreme Court precedent. *See Gunn*, 568 U.S. at 262.

## POINT II.

### THIS ACTION SHOULD NOT HAVE BEEN DISMISSED ON STATUTE OF LIMITATIONS GROUNDS

**A. New York's Executive Orders tolled the statute of limitations.**

Defendants assert that New York's Executive Orders act as a suspension of the statute of limitations and not a toll. Resp. Br. at 44. This is a misstatement of the law. The New York appellate courts have determined that the Executive Orders acted as a toll. *Brash v. Richards*, 195 A.D.3d 582, 582 (N.Y. App. Div. 2d Dep't 2021) ("[W]e conclude that the subject executive orders constitute a toll of such filing deadlines."); *McLaughlin v. Snowlift Inc.*, 214 A.D.3d 720 (N.Y. App. Div. 2d Dep't 2023); *Murphy v. Harris*, 210 A.D.3d 410, 411 (N.Y. App. Div. 1st Dep't 2022). In numerous cases, the New York appellate courts have explained that this means that any remaining time period left in a running statute of limitations as of the date of the beginning of the tolling period (*i.e.* March 20, 2020) is added to the end of the tolling period (*i.e.*, November 3, 2020). "[T]his toll of the statute of limitations did not only

apply to statutes of limitations that expired between March 20, 2020, and November 3, 2020." *Williams v. Ideal Food Basket, LLC*, 219 A.D.3d 917, 918 (N.Y. App. Div. 2d Dep't 2023).

Federalism and precedent require this Court to rely on the rulings of New York's appellate courts on the interpretation of New York law. *Flaherty v. Dixon*, No. 22 CIV. 2642 (LGS), 2023 WL 2051861, at *4 (S.D.N.Y. Feb. 16, 2023), citing *Dunnegan v. 220 E. 54th St. Owners, Inc.*, 518 F. Supp. 3d 764, 767–68 (S.D.N.Y. 2021), *reconsideration denied*, No. 20 CIV. 2418 (GBD), 2021 WL 1910723 (S.D.N.Y. May 12, 2021) and *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). Other courts in this Circuit have relied on these appellate rulings. *See, e.g.*, *Marquez v. Indian Taj, Inc.*, 20 CV 5855 (DG)(RML), 2022 WL 4485948, at *2, 2022 U.S. Dist. LEXIS 139845, at *6-7 (E.D.N.Y. Aug. 5, 2022) ("Courts in this Circuit have found that Executive Order 202.8 applies to federal cases involving New York state-law statutes of limitations.") (collecting cases); *Powell v. United States*, 19 Civ. 11351 (AKH), 2022 WL 1645545, at *2, 2022 U.S. Dist. LEXIS 93314, at *7-8 (S.D.N.Y. May 24, 2022). Accordingly, using March 1, 2019 as the end of continuous representation, the three-year statute of limitations was tolled until October 15, 2022. Even using the February 4, 2019 date as the end of continuous representation, the three-year statute of limitations was tolled until September 20, 2022. Given that this case was filed on September 12, 2022 (JA-17), it was timely.

**B. Defendants' representation was not limited.**

In their brief, Defendants suggest that the representation here was "limited," "outside the scope" of the engagement letter,[4] "nominal at best," and ceased when DLA signed the January 21, 2019 stipulation. (JA-295.) Link Motion's allegations in the Complaint are exactly the opposite (JA-27-33 ¶33-63; JA-37 ¶¶74-75), and under New York law, any appearance in court by an attorney to file a stipulation on behalf of a client, or any other document affecting a court order, constitutes a full representation of the client. *See*, *e.g.*, *Deep v. Boies*, 16 Misc. 3d 1121 (A), 847 N.Y.S.2d 901 (N.Y. Sup. Ct. Albany County 2007) ("protecting the interests of a client in settling a judgment or other court order constitutes more than merely nominal representation"), *aff'd*, *Deep v. Boies*, 53 A.D.3d 948 (N.Y. App. Div. 3d Dep't 2008) and citing *Deutsch v. Polly N. Passonneau, P.C.*, 297 A.D.2d 571 (N.Y. App. Div. 1st Dep't 2002); *Romanian Am. Interests, Inc.*, 94 A.D.2d 549, 554 (N.Y. App. Div. 2d Dept. 1983) ("We think it sufficient that, in accepting a client's case, an attorney undertakes the responsibility of ascertaining the pertinent facts and preparing for trial"); *Goldstein v. Albert (In re Albert)*, 277 B.R. 38, 50 (Bankr. S.D.N.Y. 2002) (appearing counsel "knew or should have known of the risk that, once he was counsel of record for Plaintiffs, he could be required to continue in that

---

[4] The scope of the engagement letter is irrelevant because Defendants appeared as defense counsel of record for Plaintiff, triggering the duties required of all counsel who appear before a tribunal as counsel of record. *See Romanian Am. Interests, Inc. v. Scher*, 94 A.D.2d 549, 554 (N.Y. App. Div. 2d Dept. 1983); *Frederick v. Meighan*, 75 A.D.3d 528, 532 (N.Y. App. Div. 2d Dep't 2010).

representation whether or not his fees were being paid"). The District Court erred in finding that Defendants' representation was limited.

## C. The continuous representation doctrine tolled the limitations period until at least February 4, 2019.

Defendants incorrectly state New York's rule on continuous representation. Continuous representation does not cease on the day of the malpractice–as Defendants suggest. Resp. Br. at 40. Rather the representation continues until the client is notified that counsel is no longer representing it. *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 170-71 (N.Y. 2001). Here, that did not occur until February 4, 2019, at the earliest, or March 1, 2019, when the Court entered the order permitting DLA to withdraw as counsel for Link Motion. (JA-629; JA-33 ¶63.)

Indeed, the Baliga Court had previously found that "DLA Piper . . . represented Link Motion . . . from at least December 21, 2018 to March 1, 2019." *Baliga v. Link Motion Inc.*, 385 F. Supp. 3d 212, 222 (S.D.N.Y. 2019), cited by DLA in Resp. Br. 54 at 22. Rather than finding that DLA had not represented Link Motion, the Baliga Court found that, ***during the time of DLA's representation***, Link Motion had not "opposed the motion leading to the Preliminary Injunction Order." *Baliga*, 385 F. Supp. 3d at 222 (emphasis added). And it was these "unrefuted" submissions that the Baliga Court relied on in entering the preliminary injunction and appointing the Receiver. *Id.*

The allegations of the Complaint show that Link Motion could not have known until February 4, 2019, at the earliest, that DLA was planning to withdraw from representing Link Motion. Thus, under New York law, DLA continuously represented Plaintiff until at least that date. *Schrull v. Weis*, 166 A.D.3d 829, 832, 87 N.Y.S.3d 228, 232 (2018) ("The allegations in the complaint failed to reflect, as a matter of law, that the plaintiff knew or should have known that the defendants had withdrawn from representation on the personal injury claim more than three years before the legal malpractice action was commenced"). At the least, Plaintiff has raised an issue of fact as to whether the continuous representation ceased on February 4, 2019 or March 1, 2019. As such, dismissal on a motion to dismiss was not appropriate. *See Cordero v. Koval Retjig & Dean PLLC*, 151 A.D.3d 587, 57 N.Y.S.3d 145, 146 (2017) (finding the end date of a continuous representation to be a fact issue where there is no evidence that the plaintiff was aware that representation had ceased).

Defendants suggest that Plaintiff's assertion of more than one theory to extend the statute of limitations is somehow nefarious. It is not and Defendants cite no authority otherwise. The continuous representation doctrine tolled the statute of limitations until at least February 4, 2019. (JA-629; JA-33 ¶63). And on March 20, 2020, the Executive Orders applied to toll the statute for an additional 228 days, which made Plaintiffs' filing on September 12, 2022 timely.

**D. Equitable tolling could have been applied.**

Contrary to Defendants' contentions, Link Motion has alleged a plausible basis for the Court to apply equitable estoppel or tolling. *Doe v. United States*, 76 F.4th 64, 72 (2d Cir. 2023) (the standard for equitable tolling is "whether a plaintiff faced extraordinary circumstances" based on "'the severity of the obstacle impeding compliance with a limitations period.'"), *quoting Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021) *and Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *see also Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005) ("the doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that 'he has been pursuing his rights diligently' and that 'some extraordinary circumstance stood in his way.'"), *quoting Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Here, Link Motion was prevented from bringing this malpractice claim against Defendants by the extraordinary circumstances of a Receiver who dominated the Company and who was appointed as a result of the negligence of Defendants, including their failure to tell the Court that they did not have their client's informed consent. Given the disputed questions of fact that arise from the allegations of wrongful conduct by the Receiver (JA-466-483), it is improper to dismiss at this stage of the case. *Torres*, 417 F.3d at 279 (a district court should conduct an evidentiary hearing before making factual findings on equitable tolling).

This Court should also apply equitable estoppel to toll the statute of limitations

because, as the District Court noted (JA-303 n.11), one of Link Motion's shareholders (China AI) timely commenced a derivative suit (the "China AI Action") to assert the same cause of action against the same Defendants. The pendency of the China AI Action satisfies the requirements for equitable tolling. Because the claim brought in the China AI Action was brought derivatively on behalf of Link Motion, Link Motion's claim should have the benefit of the earlier filing date the China AI Action. *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) ("This Court has applied the doctrine as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights.") (cleaned up); *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (the purpose of equitable tolling is to "prevent inequity").

## POINT III.

## THE DISTRICT COURT'S DECISION DID NOT EXAMINE CAUSATION AND THIS COURT SHOULD NOT AFFIRM DISMISSAL ON THAT GROUND.

Defendants invoke the principle that "[a]n appellate court may affirm a district court's decision on any basis for which a sufficient record exists to permit findings of fact and conclusions of law," *Ry. Lab. Executives' Ass'n v. Staten Island R. Corp.*, 792 F.2d 7, 12 (2d Cir. 1986), in asking this Court to affirm under Rule 12(b)(6). This legal principle is not appropriate here, where the Court lacks subject matter jurisdiction, and the parties' 12(b)(6) arguments were not fully briefed before the

trial court.

In any event, Link Motion has plausibly alleged causation here, negating the "alternative ground" for affirmance asserted by Defendants in their brief. The Complaint plausibly alleges that ***but for*** Defendants' failure to raise a defense in opposition to the December 2018 application by Baliga for relief under Rules 65 and 66, Link Motion would have obtained a more favorable result on that application. (JA-34 to JA-37 ¶¶67-70.) Link Motion would have shown that Baliga lacked standing to sue derivatively and that he had failed to allege purchases and sales sufficient to state a claim under the federal securities laws, or otherwise failed to meet the standards for provisional equitable relief under Rules 65 or 66. *See generally Baliga v. Link Motion Inc.*, No. 18CV11642 (VM) (DF), 2020 WL 5350271, at *24-26 (S.D.N.Y. Sept. 4, 2020) (discussing issue of Baliga's standing to sue derivatively); *Baliga*, 385 F. Supp. 3d at 221 (dismissing Baliga's securities laws claims for failure to allege misstatements in connection with the purchase or sale of securities).[5] (*See* JA-38-39 ¶¶78-83). In addition, Link Motion was deprived of the ability to make a record for appeal in opposition to Baliga's 2018 application for preliminary equitable relief pursuant to Rules 65 and 66. (JA-35 to JA-36.) Once

---

[5] The *Baliga* Court's subsequent rulings make clear that Baliga failed to state securities law claim except as to one purchase of securities valued at less than $20,000. *See Baliga v. Link Motion, Inc.*, No. 18 CIV. 11642 (VM), 2022 WL 16707361, at *12 (S.D.N.Y. Nov. 4, 2022) (no actionable transactions before March 30, 2017); *Baliga v. Link Motion Inc.*, No. 18 CIV 11642 (VM), 2023 WL 4841883, at *2 (S.D.N.Y. July 28, 2023). (*See also* Supplemental Appendix ("SA")-18-21 ¶¶57-66 and SA-39 ¶126).

the *Baliga* Court entered the receivership order, Link Motion became subject to the clear error standard in seeking to vacate the preliminary injunction and appointment of the Receiver. (*See* SPA-7). *See also* [Yonkers Raceway, Inc](), 21 F.R.D. at 6.

Negligence causing a litigant to be deprived of its right to make a record in opposition to relief requested by an adversary is legal malpractice under New York law. *See* [Lee](), 209 A.D.3d at 532 (finding causation when an attorney's malpractice "deprived [the client] of the opportunity to amass a record on which the inquest court might have credited his defense").

The *Baliga* Court's August 25, 2022 decision and order declining to vacate the receivership *ab initio* on the grounds that it had power under the securities law to appoint a receiver has no bearing on the legal malpractice claim here, which asks how would a United States District Court have decided Baliga's application for preliminary equitable relief under Rules 65 and 66 *if* Link Motion had opposed the motion on the meritorious grounds that Baliga (i) ***had misrepresented*** his standing to sue derivatively, and (ii) ***had failed*** to allege a purchase and sale of securities. The August 25, 2022 decision by the *Baliga* Court did not answer this hypothetical question and was decided under a different (clear error) standard. And as the *Baliga* Court noted in its June 11, 2019 decision, Link Motion did not submit any papers in opposition to Baliga's motion under Rules 65 and 66. [*Baliga*](), 385 F. Supp. 3d at 216. When the *Baliga* Court granted Baliga's request for provisional equitable relief

under Rules 65 and 66, it was presented with a one-sided argument and a stipulation signed by DLA purporting to state that Link Motion had consented to the Rule 65 and 66 relief requested by Baliga. *See id*.; *see also* JA-634.

Contrary to DLA's contentions, it is likely that a District Court would have ruled differently had DLA properly opposed Baliga's Rule 65 motion. Given the later discovery of Baliga's false allegations (JA-440), and later ruling that Baliga's first complaint failed to state a claim under the securities law, *Baliga*, 385 F. Supp. 3d at 221, it is plausible to expect that a District Court would have reached a different decision– requiring the Receiver to post security, limiting  the scope of the Receiver's powers, or even a denying Baliga's request for a preliminary injunction and appointment of a Receiver–if only DLA had provided competent advice, had submitted evidence to oppose Baliga's December 2018 motion, and had DLA not stipulated to the provisional equitable relief requested by Baliga.

Defendants' arguments as to intervening causes must also be rejected. Causation on a legal malpractice claim is established on a showing that the attorney's negligence "was one of the causes" of damage. *Kirk v. Heppt*, No. 05 Civ. 9977, 2009 WL 2870167, 2009 U.S. Dist. LEXIS 80989, at *28 (S.D.N.Y. Sept. 3, 2009), citing *Garten v. Shearman & Sterling LLP*, 52 A.D.3d 207 (N.Y. App. Div. 1st Dep't 2008) and *Barnett v. Schwartz*, 47 A.D.3d 197 (N.Y. App. Div. 2d Dep't 2007) ("'but for' causation is [not] synonymous with sole proximate cause"). The client "need not

show that [the attorney's] negligence was the sole cause" of the client's damages. *Kirk*, 2009 WL 2870167, at \*10, citing *Skinner v. Stone, Raskin & Isreal*, 724 F.2d 264, 266 (2d Cir. 1983) ("It is well-settled law in New York, that, when there are several proximate or efficient causes of an injury, the injury may be attributable to any one or more of the causes").

Defendants' argument that the *Baliga* court itself is an intervening cause stands the law of legal malpractice on its head. A court decides the issues presented to it, and in this case the Defendants failed to present defenses for the *Baliga* court to consider when ruling on Baliga's motion under Rules 65 and 66. The *Baliga* Court's decisions, made on the basis of Defendants' failure to provide competent representation, cannot be relied on to absolve Defendants' malpractice.

Subsequent counsel is also not an intervening cause. The legal malpractice claim here arises from the failure to assert defenses and an opposition to Baliga's Rule 65 motion. Only Defendants represented Link Motion during the period of time between the filing of Baliga's Rule 65 motion in December 2018, the *Baliga* Court's issuance of the order granting that motion on February 1, 2019, and the *Baliga* Court's order granting Defendants leave to withdraw on March 1, 2019. The subsequent retention of successor counsel for Link Motion does not change this fact. Dr. Shi did not hire successor counsel to defend Link Motion after DLA withdrew because, as set out in the Receivership Order, the Receiver was ordered to appoint

successor counsel, which he did not do. (JA-624) (memo endorsement directing Link Motion, then controlled by the Receiver, to retain substitute counsel). Link Motion was not permitted to retain successor counsel until the Court granted leave to do so on October 23, 2020, for the limited purpose of moving to dismiss the Baliga Second Amended Complaint. (*See* ECF No. 175, 1:18-cv-11642.)

Defendants gloss over the facts regarding the assertion of the standing defense. Resp. Br. at 57. After the Receiver was appointed, the Receiver—acting on behalf of Link Motion—and Baliga challenged Shi's standing to assert defenses on behalf of Link Motion. *See Baliga*, 385 F. Supp. 3d at 217. The dispute as to who, if anyone, could assert Link Motion's rights was not substantively resolved by the *Baliga* Court until September 4, 2020, when Magistrate Judge Freeman issued her September 4, 2020 Memorandum Order, *see Baliga*, 2020 WL 5350271, at *1 (addressing the "Threshold Issues"), and authorized Dr. Shi's counsel to represent Link Motion for purposes of a Rule 12(b)(6) motion to dismiss. *See* ECF No. 175, 1:18-cv-11642. Thus, the delay in the raising any defenses on behalf of Link Motion was itself proximately caused by Defendants' malpractice in failing to oppose Baliga's December 2018 motion under Rules 65 and 66. DLA cannot claim on one hand that any malpractice occurred no later than January 21, 2019, Resp. Br. at 40-41, and also that counsel first permitted to appear on behalf of Link Motion in October, 2020 is liable for the alleged malpractice.

# CONCLUSION

For the foregoing reasons and those set forth in Link Motion's opening brief, this Court should (i) reverse that part of the Decision & Order of The Honorable Victor Marrero, U.S.D.J., entered in this action on the 23rd day of December, 2022, which denied the motion by Plaintiff-Appellant to remand this action to state court; (ii) reverse that part of the Decision & Order of The Honorable Victor Marrero, U.S.D.J., entered in this action on the 26th day of May, 2023, which granted the motion by Defendants-Respondents to dismiss this action with prejudice; (iii) vacate the judgment entered in this action on the 26th day of May, 2023; (iv) reverse the Decision of The Honorable Victor Marrero, entered on the 20th day of June, 2023, which denied Plaintiff-Appellant's motion for reconsideration; and (iv) remand this action to state court.

Respectfully submitted,

  /s/ Michael James Maloney
Michael James Maloney
*Counsel of Record*
Rosanne E. Felicello
FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10036
Tel. (212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com
*Attorneys for Plaintiff-Appellant*

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Local Rule 32.1(a)(4) because, exclusive of pages containing the table of contents, table of authorities, proof of service, and this Certificate, this document contains 5,573 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced type face using Microsoft Word in Times New Roman in 14-point font.


   /s/ Michael James Maloney
Michael James Maloney
*Attorney for Plaintiffs-Appellants*

Dated: October 18, 2023